UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIMMY TOBIAS,<br><br>                *Plaintiff,*<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>                *Defendant.* | Civil Action No. 25-CV-02853-RDM |

**PLAINTIFF'S PRE-MOTION STATEMENT**

### I.      INTRODUCTION

Plaintiff Jimmy Tobias seeks, under FOIA, the documents to which the Attorney General referred in a Fox News interview when she stated that there was a Jeffrey Epstein client list "sitting on my desk," as well as the client list itself. Following the Court's first grant of summary judgment to Tobias, DOJ produced a declaration purporting to describe its unsuccessful search for the client list, which essentially repeats without elaboration the agency's claim that there is no such list, without even attempting to explain the discrepancy between its position and the Attorney General's statement that the list is "sitting on my desk," and with no explanation of how the search was conducted, if at all. DOJ also purported to respond to the remainder of Tobias's request by pointing Tobias to a website that houses all its publicly available Epstein-related records, without saying which records are responsive to the request and without indicating if it withheld or redacted any records under FOIA's exemptions.

Both actions are unlawful and deficient for reasons explained below. After DOJ filed its declaration and FOIA response, Tobias explained these deficiencies in a letter to DOJ and suggested that it amend its position by (1) providing a second search declaration, and (2)

responding to the request in the ordinary course under FOIA. DOJ refused. So Tobias is constrained to initiate a second round of summary judgment proceedings.

## II.     ARGUMENT

### A.     DOJ's search was inadequate and an evidentiary hearing is warranted.

DOJ bears the burden to demonstrate the adequacy of its search. *Am. Oversight v. HHS*, 101 F.4th 909, 923 (D.C. Cir. 2024). To meet that burden, it must provide "reasonably detailed, nonconclusory affidavits that explain the scope and method of the search it conducted." *Id*. (cleaned up). And it must account for "positive indications of overlooked materials." *Id*. DOJ has done neither.

First, DOJ's declaration contains virtually no information about how the agency searched for the Epstein client list. Only two paragraphs—paragraphs 10 and 11—speak to that issue. They say, in essence, that DOJ's Office of Information Policy reached out to unnamed people in the Office of the Associate Attorney General, who liaised with unnamed "knowledgeable" individuals in the Office of the Attorney General, and was eventually informed that no client list exists. *See* ECF No. 21-2, ¶¶ 10-11.[1] But the declaration is silent as to why or how these unidentified individuals reached that conclusion and the basis of their supposed knowledge. To justify a search in a manner that comports with FOIA, the agency must identify and search "all places where records were reasonably likely to be found." *Shteynlyuger v. CMS*, 698 F. Supp. 3d 82, 114 (D.D.C. 2023). It must use "methods which can be reasonably expected to produce the information requested." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). And it must explain those locations and methods in a declaration. *See Am. Oversight*, 101 F.4th at 923.

---

[1] Paragraphs 8 and 9 describe in boilerplate terms, OIP's general approach to FOIA responses, but do not even claim that approach was followed in this case.

DOJ's declaration is devoid of any detail about where or how DOJ searched for the client list, and thus why the supposedly "knowledgeable" officials concluded that there isn't one.

Second, it is not even clear if the "knowledgeable" individuals are talking about the client list responsive to Tobias's request. In its declaration, DOJ relies on the July Memo, which denied the existence of an "***incriminating*** client list." ECF No. 21-2, ¶ 11. (emphasis added). It is unclear how or why DOJ used the term "incriminating," and it may well be that it denied the existence of an "incriminating client list" not because there is no client list, but because there is a client list but it is not "incriminating" as DOJ uses the term.

Third, and most fundamentally, DOJ's declaration fails entirely to address the elephant in the room: it makes no effort to reconcile its claim that there is no client list with the Attorney General's unambiguous statement that there was one "sitting on my desk." Tobias doubts DOJ could do so in the summary judgment posture: whatever DOJ says in a declaration will be controverted by the Attorney General's statement, and the Court will need to resolve that factual dispute after an evidentiary hearing. *See Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) ("[I]f any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant, and that fact is material to the outcome, summary judgment must be denied."); *see also, e.g.*, *Am. Transparency v. HHS*, No. 21-cv-02821, 2025 WL 2779929, at *7 (D.D.C. Sept. 30, 2025) (ordering evidentiary hearing in FOIA case after finding dispute of fact precluded summary judgment); *Long v. ICE*, 279 F. Supp. 3d 226, 230, 245 (D.D.C. 2017) (same). So at a minimum, since DOJ has declined Plaintiff's invitation to attempt to resolve this issue through a supplemental declaration, DOJ is not entitled to summary judgment on search adequacy, and an evidentiary hearing is warranted. Only the Attorney General's testimony can resolve the dispute of fact at the heart of this case.

### B. For the rest of the request, DOJ failed to provide the "determination" required by FOIA.

DOJ also responded to the part of Tobias's request seeking the records the Attorney General said were "sitting on my desk" during the Fox News interview. Its response was, in full, to say that those documents "can be found on the Department's website at the following address: https://www.justice.gov/epstein/doj-disclosures." ECF No. 21-1 at 1. At that time, the website contained approximately 125,575 pages of documents, and DOJ had roughly 2 million more documents to review. *See* Letter from U.S. Attorney Jay Clayton to Judge Paul Engelmayer, 1-2, *U.S. v. Maxwell*, No. 20-cr-00330 (Jan. 5, 2026), ECF No. 826.

As an initial matter, it is unclear what this response even means: whether (1) ***all*** the documents on the website were "sitting on [the Attorney General's] desk" (in which case DOJ evidently interpreted "desk" in some metaphorical sense without explaining why it adopted that interpretation), or (2) only ***some*** of the thousands of documents were sitting on that desk. Either is problematic. On the first meaning, DOJ, without admitting it, almost certainly failed to produce all responsive documents: it would be a remarkable coincidence that there were 125,575 pages of responsive documents sitting on the Attorney General's (metaphorical) desk and that they happened to be the first 125,575 pages to be reviewed, with millions more to come that were not sitting on the "desk." And on the second, it is impossible for the public to tell which documents the Attorney General was discussing in her interview, which has been a matter of exceptional public controversy for nearly a year and implicates the public's ability or not to trust what the Attorney General says on television; DOJ thus failed to meaningfully "make the records promptly available" to Tobias. 5 U.S.C. § 552(a)(3)(A).

Either way, DOJ's response likely violates FOIA for an additional reason. DOJ's response letter apparently purports to be the "determination" FOIA requires. *See* 5 U.S.C. § 552(a)(6)(A)(i).

To constitute a valid "determination," the agency must "indicate the scope of the documents it will produce and the exemptions it will claim." *Citizens for Resp. & Ethics in Washington v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013). But DOJ did not do that. Given that many Epstein-related records implicate victims' privacy, at least some records sitting on the Attorney General's desk were likely withheld from the public in whole or in part based on privacy exemptions DOJ did not identify in its determination letter. Records also may have been withheld based on other exemptions permitted by the Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 657, that contain analogues in FOIA. *Compare, e.g.*, *id*. § 2(c) (exempting records whose disclosure "would jeopardize an active federal investigation or ongoing prosecution") *with* 5 U.S.C. § 552(b)(7)(A) (exempting law enforcement records whose disclosure "could reasonably be expected to interfere with enforcement proceedings" if foreseeable harm is also proven). Tobias does not, at this juncture, contest any of these assertions, though he reserves all rights. The point, rather, is that the absence of any reference to exemptions likely betrays a slipshod approach by DOJ to its FOIA response rather than a serious attempt to identify the responsive documents and comply with the statute.

Tobias thus plans to move for summary judgment on DOJ's failure to issue a FOIA-compliant determination. Following those proceedings, the Court should order DOJ to clarify the meaning of its response, produce all responsive records to Tobias (or provide links to the specific documents on its website), and identify all the exemptions it plans to assert. Because this request is in litigation, the Court should also order DOJ to produce a *Vaughn* Index.

| | |
|---|---|
| Dated: January 26, 2026 | Respectfully submitted,<br><br>*/s/ Stephen Stich Match*<br>Matthew Topic, D.C. Bar No. IL0037<br>Stephen Stich Match, D.C. Bar No. MA0044<br>Merrick Wayne, D.C. Bar No. IL0058<br>LOEVY & LOEVY<br>311 N. Aberdeen, Third Floor<br>Chicago, IL 60607<br>Tel. (520) 488-0486<br>foia@loevy.com<br><br>*Attorneys for Plaintiff* |